EUNICE L. WHITCOMB *vs.* DANIEL DUTTON.

Waldo.    Opinion May 7, 1896.

*Deeds.  Evidence.  Judgments.  Town-Lines.  R. S., c. 3, § 67.*

The adjudication of commissioners appointed by the court, under R. S., c. 3, § 67, to ascertain the lines in controversy between adjoining towns, can in no way affect the ownership of private property or determine controversies between individuals.

That statute provides a method for ascertaining the location of a line in controversy between adjoining towns and makes the determination of commissioners appointed by the court conclusive upon the towns as to the location of the town line for all purposes; but a proceeding under it was never con-

templated for the purpose of passing upon and determining private controversies.

The constitution of this State guarantees to every one injured in his property, a remedy "by due course of law," and in all controversies concerning property a trial by a jury and a right to be heard by himself or his counsel. *Held;* that a proceeding under R. S., c. 3, § 67, is not a "due course of law" for the settlement of controversies concerning property of private land owners, whose land was upon either side of the town line, who were not parties to the proceedings, and were not heard and could have had no opportunity to be heard upon the question of their respective ownerships, because that question was not involved.

Where a line described in a deed or charter by course does not correspond with that indicated by monuments, either referred to in the deed or charter, or established in the original survey, the latter will control, because monuments are the best evidence of the true line; and the course must yield, whenever the monuments are certain or are capable of being made certain. But if the monuments cannot be found or their locations established, then resort must be had to the course as the only other description given.

Evidence of the recognition of one or the other of two lines respectively claimed by the parties to be the true line, by monuments erected since the line was originally located, and by fences and occupation, is admissible as having some tendency to show where the line was first established; but the value and weight of such evidence, as well as the identity of disputed monuments and their original locations, are questions of fact for the jury.

Where the testimony upon these questions is conflicting, the verdict of the jury will not be disturbed unless the court is satisfied that it was clearly wrong. See *Magoon* v. *Davis*, 84 Maine, 178.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

The case appears in the opinion.

*W. H. McLellan,* for plaintiff.

*R. F. Dunton and F. W. Brown,* for defendant.

The adjudication upon this town line by the commissioners appointed by the court is a judgment in rem, and conclusive upon all parties. Freeman on Judgments, (3rd Ed.), § 606; *Woodruff* v. *Taylor*, 20 Vt. 65; *Pitman* v. *Albany*, 34 N. H. 577.

Notice of the time and place of hearing was given to all parties interested, by the commissioners, by delivering a true copy of the notice to the town clerk of each of the towns of Waldo and Morrill, and by posting the notice in two public and conspicuous places in each of said towns; and in this respect, if in no other, this case is distinguishable from the case of *Magoon* v. *Davis*, 84 Maine, 178,

involving the town line between the towns of Cornville and Skow-hegan.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

WISWELL, J. Real action. The question in dispute is as to the location of the divisional line between the land of the plaintiff and that of the defendant.

The plaintiff's land is described as being in Morrill with the town line between Morrill and Waldo as its easterly boundary, the defendant's is in Waldo with the same town line as its westerly boundary. The verdict was for the plaintiff and the defendant brings the case to the law court upon exceptions and motion.

I. Exceptions. A controversy existing as to the location of this town line between the towns of Morrill and Waldo, the selectmen of the latter town petitioned the Supreme Judicial Court at the October Term, 1887, for Waldo County, setting forth such controversy and praying that such line be run in accordance with the provisions of R. S., c. 3, § 67. Further proceedings were had thereon as required by this section, commissioners were appointed, who after giving notice of the time and place of their meeting to all persons interested, and after hearing all such persons at the time and place appointed, proceeded to ascertain and determine the line in dispute, and placed suitable monuments for the permanent establishment of such line. They subsequently made duplicate returns of their proceedings, as required by statute, and therein described the line in dispute as ascertained and determined by them.

The land claimed by the plaintiff lies easterly of this line established by the commissioners and between that line and where she says the true line is, or was, prior to the proceedings referred to. The defense offered in evidence a record of these proceedings and claimed that the line established by the commissioners as the town line between Morrill and Waldo was necessarily the true line between the lands of these parties, or that it was conclusive

evidence of the location of the true boundary line between them. The presiding justice refused to so rule, but did instruct the jury that the determination by the commissioners of the line between the towns was not conclusive as to the location of the boundary line between the lands of these parties.

We have no question as to the correctness of this ruling. The adjudication and determination of commissioners appointed in proceedings of this nature can in no way affect the ownership of private property, or determine controversies between individuals. Their determination is conclusive, if the proceedings are regular and sufficient, as to the location of the town line for all purposes. It is made so by the section referred to: "And such lines shall be deemed in every court and for every purpose the dividing line between such towns." This provision is undoubtedly a wise one. It is a matter of great public importance that the boundaries of towns should be certain. Upon the location of a town's territorial limits depends its right of taxation, the residence for various purposes of those living upon any territory in dispute, the obligation of the town to maintain and keep in repair its highways and bridges, and many other rights and liabilities. It is equally as important that these limits, when in dispute, should be finally determined by a tribunal constituted, and in a method provided, for that express purpose.

But this proceeding was never contemplated for the purpose of passing upon and determining private controversies. The constitution of this state guarantees to every one injured in his property, a remedy "by due course of law", and in all controversies concerning property a trial by a jury and a right to be heard by himself or his counsel. This proceeding was not by due course of law for the settlement of controversies concerning property; these land owners were not parties to the proceedings; they were not heard and could have had no opportunity to be heard upon the question of their respective ownerships, because that question was not involved.

The case of *Pitman* v. *Albany*, 34 N. H. 577, much relied upon in support of the exception as to the conclusiveness of the determination by the commissioners, is not applicable to this question.

That was an action to recover for injuries caused by a defective highway. The court held that the judgment of a court, which was given by statute the power to make a final determination of the location of town lines, was final and conclusive as to the limits within which a town was under obligation to keep its highways in repair, and consequently as to the liability of the defendant town in that action. We have no question of this, but that case is no authority for the position here taken by counsel for the defendant.

II. Motion. The town line in controversy is the line between Belmont and Morrill on the west and Belfast and Waldo on the east, the easterly line of Belmont and Morrill and the westerly line of Belfast and Waldo.

Belmont, which originally embraced the territory that is now the town of Morrill, was incorporated in 1814, the easterly line being thus described in the act of incorporation: "Beginning at a yellow birch tree, being the southwesterly corner of the town of Belfast; thence north, twenty-two degrees west, by the line of said Belfast, four miles and two hundred and ninety-two rods, to a maple tree, being the northwesterly corner of Belfast aforesaid; thence continuing the same course by unincorporated lands, two miles and one hundred and seven rods to a stake and stone." The next line described, is north eighty-three degrees west by the plantation of Knox, showing that the easterly line of Belmont, the north half of which was subsequently incorporated into the town of Morrill, was coincident with the westerly line of Belfast, so far as the westerly line of Belfast extended northerly, and thence continued in the same course to the plantation of Knox.

Belfast was incorporated by the Legislature of Massachusetts in 1773; its westerly line, commencing at a birch tree at the southwest corner of the town, is thus described in the Act of Incorporation, "from thence north twenty-two degrees west, three hundred and seventy-two chains to a rock maple tree, one rod westerly from a quarry of stones."

The land in dispute is a strip about eighty-seven rods long,

thirteen rods wide at the southerly end and nineteen rods at the northerly end, and lies easterly of the line as located by the commissioners and between that line and what the plaintiff claims is the location of the original line. The line claimed by the plaintiff is obtained by commencing at the southwest corner of Belfast and running from thence north, sixteen and one-half degrees west past the land in controversy. The surveyor called by the plaintiff obtained this course by taking the southwest corner of Belfast, about which there is apparently no controversy, and a monument known as the Hatch monument which is claimed to be on the line between Belfast and Belmont. The surveyor testified that the difference between the course given in the acts of incorporation, north twenty-two degrees west, and the course ran by him, north sixteen and one-half degrees west, would about correspond with the variation in the compass to be expected between the time that the course was first given and the time of his survey. This is not contradicted. The jury found that this line was the true one. The line located by the commissioners, which is claimed by the defendants to be the true one, commences at a point claimed by the defendant to be the northwest corner of Belfast, and extends north twenty-one degrees west.

The defendant urges that the verdict was manifestly wrong, and that the line established by the commissioners is unquestionably the correct one. He invokes the well-recognized rule that where a line described in a deed or charter by course or distance, and that indicated by monuments established in the original survey and location of the tract or township do not correspond, the latter being the best evidence of the true line must govern, however much they may differ. This is undoubtedly true whenever the monuments are certain or are capable of being made certain. In this case the only monuments mentioned in the two acts of incorporation, which were put into the case, are the birch tree at the southwest corner of Belfast, called a yellow birch tree in the charter of Belmont, the maple tree at the northwest corner of Belfast, called a rock maple in the charter of Belfast, and therein further described as being one rod westerly from a quarry of stone,

and the stake and stone at the termination of the easterly line of of what was originally Belmont on the southerly line of Knox plantation. There appears to be no controversy as to the southwest corner of Belfast, but there is dispute as to the northwest corner of Belfast. The maple or rock maple tree is no longer there. The starting point of the commissioners' line is fifty-four feet westerly of the place where the surveyor called by the plaintiff makes the northwest corner of Belfast. Both places claimed to be corners are marked by stone monuments, but neither of them are of great antiquity;—the one claimed by the plaintiff has been placed there more recently than the other. Nor does the stake and stone, mentioned as a monument in the Belmont charter, at the termination of its easterly line, now exist and no evidence is introduced as to its location.

The defense strongly relies upon evidence which, it is claimed, satisfactorily determines the location of a beech tree mentioned as a monument at the northwest corner of a six thousand acre tract of land, which it is said in argument was subsequently incorporated as the town of Waldo. But the act incorporating the town of Waldo was not put in evidence, and this beech tree is not referred to as a monument in any act of incorporation that was put into the case. The Legislature has the exclusive authority to create all municipal corporations and to establish their boundaries.

The legislative acts incorporating the original town of Belmont and the town of Belfast, give the course of this line as north twenty-two degrees west; and both acts further describe the line by reference to certain monuments. If the locations of these monuments could be established and they indicated a line varying from the one described by course, the monuments would control, the course must yield; but if the monuments cannot be found or their locations established, then resort must be had to the course as the only other description of the boundary given in the charters. The identity of these monuments, and the places where they were originally located, being in dispute, were questions of fact for the jury.

Considerable evidence was also introduced upon both sides show-

ing a recognition of one line or the other, monuments erected since the line was first located, fences, occupation, etc. This evidence was admissible as having some tendency to show where the line was first established, but its value and weight were also for the jury.

The question was as to where the town line between these towns was originally established. The plaintiff relied upon the course, given in the acts of incorporation, upon certain monuments and certain acts of recognition. The defendant relied upon other monuments and upon other evidence that the line is where he claims it to be. After a careful examination of all the evidence and the plans, we do not feel satisfied that the verdict was so clearly wrong as to justify disturbance.

*Motion and Exceptions overruled.*