### UNITED STATES v. MORRISON.

(Fourth Division.    Fairbanks.    January 15, 1918.)

No. 757 Criminal.

I. Criminal Law ⬅➡304(6)—Evidence—Judicial Notice.

 The court will take judicial notice that Hot Springs precinct is north of latitude sixty-two degrees.

2. Game ⬅➡7—Criminal Law.

 The Game Law of Alaska provides that it shall be unlawful for dealers having in possession game animals or birds legally killed during the open season to dispose of the same within 15 days after the close of said season. *Held*, that a dealer is allowed 15 days after the close of the open season to dispose of such game by sale, but that there is no inhibition against such dealer having such game in his possession for his own consumption or use after the lapse of such 15 days.

George L. Morrison was on the 22d day of June, 1917, at a trial had before William D. Young, United States commissioner and ex officio justice of the peace in and for the Hot Springs precinct, Fourth judicial division, territory of

---

⬅➡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Alaska, convicted of a violation of section 333 of the Compiled Laws of Alaska, and was thereafter sentenced to pay a fine of $50 and costs amounting to $23.55. From the judgment of the commissioner's court, he appeals to the District Court.

R. F. Roth, U. S. Atty.; of Fairbanks.

A. R. Heilig, of Portland, Or., for defendant.

BUNNELL, District Judge. The complaint as set forth in the record filed in this court was subscribed and sworn to by game warden R. S. McDonald and is, omitting caption, as follows:

"R. S. McDonald, a game warden for the territory of Alaska, complains and alleges that the above-named defendant, he being a dealer, has in his possession five quarters of moose meat, contrary to section 333 of the Compiled Laws of Alaska, this 21st day of June, 1917. Wherefore complainant prays that the said defendant be arrested and dealt with according to law."

The defendant now moves to dismiss the action upon the ground that the facts stated in the complaint do not constitute a crime.

Section 333 of the Compiled Laws of Alaska provides as follows:

"That it shall be unlawful for any person or persons at any time to sell or offer for sale any hides, skins, or heads of any game animals or game birds in Alaska, or to sell, offer for sale, or purchase, or offer to purchase, any game animals or game birds, or parts thereof, during the time when the killing of such animals or birds is prohibited: Provided, that it shall be lawful for dealers having in possession game animals or game birds legally killed during the open season to dispose of the same within fifteen days after the close of said season."

Section 331 provides:

"That it shall be unlawful for any person in Alaska to kill any wild game animals or birds, except during the season herein provided: North of latitude sixty-two degrees, * * * moose * * * from August first to December tenth, both inclusive."

The court will take judicial notice of the fact that Hot Springs precinct is north of latitude sixty-two degrees.

It will be observed that the complaint charges the defendant with being a dealer and having in his possession on the 21st day of June, 1917, five quarters of moose meat.

The section in question makes it unlawful for any person at any time to sell, or offer for sale, to purchase, or offer to purchase any moose, or parts thereof, except during the time when the killing of moose is permitted, to wit, from August 1st to December 10th, both inclusive, except that it shall be lawful for a dealer having in his possession moose, or parts thereof, legally killed during the open season, to dispose of the same within 15 days after the close of said season, to wit, on or before December 25th.

In enacting this law for the territory of Alaska, Congress was undoubtedly prompted to protect the big game animals of this territory from wanton and wholesale slaughter, to the end that such animals should not speedily become extinct, but in the future, as in the past, should be available for food and other purposes, both for Indians and whites.

To accomplish this purpose, a restriction is placed upon the number any one person can legally kill during the open season, and as an incentive to obey the law in this regard no one can legally sell or offer to sell, legally purchase or offer to purchase, moose meat during the closed season, except a dealer who, having in his possession all or part of moose legally killed, is permitted to dispose of the same during a period of 15 days immediately following the close of the open season.

An examination of the statutes of the several states discloses the fact that almost without exception the having of game in one's possession during the closed season constitutes an offense. Our statute on the subject of protection of game, in section 329, makes it an offense to have in one's possession the eggs of certain birds, and in section 332 it is made an offense to have in one's possession in any one day more than 25 grouse or ptarmigan or 25 shore birds or waterfowl.

It is apparent that Congress did not intend to place strict regulations and limits on "the having of game in one's possession." Here is a vast territory of over half a million square miles, the conquest of which either for mining or agricultural purposes is attended by unusual difficulties and enormous expense; the population, comparatively, is few in numbers; the excessive cost of transportation makes the cost of all cold storage products almost prohibitive. In striking contrast to this condition, the country abounds in game, which

does and should furnish to the inhabitants thereof a large percentage of its meat supply.

Our law permits any one person during the open season in any one year to kill two bull moose. A bull moose usually dresses from 500 to 900 pounds, and it is apparent that two moose will provide a supply of meat sufficient for the needs of the average family for several months. Under these conditions, it must be admitted that it would have been unwise for Congress to have made the provisions relating to the protection of game so strict that this natural food supply should not serve its purpose.

The law properly assumes that game, such as moose, caribou, and sheep, in this territory, will be an article for sale, barter, and exchange, and no limit is placed upon the amount any individual may sell or offer to sell, purchase or offer to purchase, or have in his possession, during the open season. It is not contended by the government that there is any restriction placed upon the amount of this kind of game any individual, not a dealer, may have in his possession at any time, providing it was legally killed during the open season. The contention is that, since the statute provides "that it shall be lawful for dealers having in possession game animals or game birds legally killed during the open season to dispose of the same within fifteen days after the close of said season," it necessarily follows that, if a dealer has not disposed of such game on hand within the 15-day period, and has the same in his possession after that time, he is liable under the statute.

This contention cannot be sustained. For a period of 15 days after the open season the dealer can sell moose meat legally killed during the open season. If "to dispose of" meant that he must dispose of all in his possession, then it would not be lawful for him to have in his possession after the 15-day period any supply at all for private consumption, and he and his family would thereby be denied that right and privilege enjoyed by all other individuals. In my opinion, the law, the subject-matter of which is "sale," means that the privilege to dispose by sale of such meat on hand must be taken advantage of by the dealer as such within the 15-day period, and that thereafter, if there remains on hand in his possession any such meat undisposed of, his position with

6 A.R.—3

regard to it is the same as that of any other individual with regard to any such meat on hand in such individual's possession after the closed season.

For a case involving the same principle, but not the same identical point, see State v. Lynch, 89 Me. 212, 36 Atl. 70, where the court says:

"A market man who deals in game has the same right that every other person has of killing not exceeding one moose in one year. And the possession by him of the carcass of one moose, at a place other than his market, is not evidence that the same was illegally taken or killed, notwithstanding that he has had other moose, during the same open season, at his established place of business, for sale to local customers."

The finding on June 21st of five quarters of moose meat in the possession of the defendant, Morrison, might well arouse the righteous indignation of a game warden in the discharge of his official duties, and would certainly justify the fullest investigation, but to constitute a crime under the law there must be something more than the mere having of it in his possession.

Suppose, for example, a dealer, anticipating an opportunity to sell 20 quarters of moose from the 10th to the 25th of December, should purchase that amount during the open season, and that on account of a changed condition of affairs there was no demand for the same, and no chance to sell it or dispose of it in any manner such as would constitute a sale. How can it be held that he must destroy all that remains otherwise undisposed of on the last of the 15-day period, in order that he may escape a prosecution under section 333? If the dealer, after the 15-day period, sells or offers to sell such meat, no matter at what price, he is guilty of a crime. The law of supply and demand does not provide that there will always be a demand for the supply on hand, and, if dealers are persisting in using bad judgment in carrying too large a stock of the meat of game animals, with the result that such animals are being destroyed and wasted, Congress can correct the evil by appropriate legislation.

The motion to dismiss the case will be granted.